IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VAUGHN N. COUTU,

                Plaintiff,

v.                                         OPINION AND ORDER

KILOLO KIJAKAZI,                        22-cv-613-wmc
Acting Commissioner of Social Security,

                Defendant.

---

      Plaintiff Vaughn Coutu seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that he was not disabled within the meaning of the Social Security Act. Specifically, Coutu contends that the administrative law judge ("ALJ") erred by concluding that he could manage full-time work despite: his need for an assistive device to stand and walk; his limitations in concentration, persistence, and pace; and the unreliability of the vocational expert's testimony. Because the ALJ's findings and conclusions are supported by substantial evidence, however, the court will affirm the Commissioner's decision and dismiss Coutu's appeal.

## BACKGROUND

      Coutu applied for disability benefits and supplemental security income in October 2020, alleging hip problems, alcohol abuse, depression and anxiety. (AR 651, 655.) He further alleged an onset date of January 9, 2013, when he was just 37 years old. (AR 407.) Coutu's medical records also show treatment for hip pain, stemming from a 2011 hip injury and surgery (AR 921), depression, anxiety and alcohol abuse between 2019 and 2021. (AR 904–12.)

Coutu's medical problems worsened in early March 2021, when he reported to the emergency room on several occasions for lower extremity swelling, numbness, weakness and shortness of breath. (AR 1701.) Those symptoms continued throughout spring and summer 2021, causing him to experience repeated falls and to begin using a walker. (AR 470–71.) Eventually, Coutu was referred to a neurologist and in early August 2021, diagnosed with Guillain Barre syndrome.[1] (AR 1040–42.) However, by mid-August 2021, his symptoms had improved significantly, and his neurologist prescribed bilateral carbon ankle-foot orthosis ("AFOs") to help with pain, stability and endurance, as well as recommended that Coutu walk 20 to 30 minutes a day. (*Id.*) At his neurological follow-up on February 18, 2022, Coutu reported that he was no longer bothered by nerve pain and only occasionally used a cane or walker, though he still had sensory loss, had muscle weakness, and was still using the AFOs, which were "helpful and comfortable." (AR 1050.)

Despite this bout with Guillain-Barre, Coutu's claim for benefits was denied by the local disability agency initially and on reconsideration (AR 443–44, 475–76), and he requested an evidentiary hearing. (AR 417–22.) At the hearing held before ALJ Ahavaha Pyrtel in May 2022, Coutu testified that he had worked full-time as a landscaper and supervisor for several months in 2019 and 2020 (AR 424–26), but could no longer work due to back pain, leg numbness and difficulty standing and walking. (AR 428.) Coutu also described having to wear

---

[1] Guillain-Barre Syndrome is a disorder in which the body's immune system attacks the nerves, causing weakness and tingling in the hands, legs and feet, and potentially paralyzing the whole body. Its onset is often sudden and acute, but most people recover completely and are able to walk again within six months after symptoms first start, although some people have lasting weakness, numbness and fatigue, and severe cases can be fatal. *Guillain-Barre Syndrome*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/guillain-barre-syndrome/symptoms-causes (last visited May 23, 2023).

leg braces, always using a walker or cane, and having fallen several times because of leg weakness. (AR 429, 433–34). As a result, Coutu reported that he now spent most of the day sitting in a recliner (AR 431), could not walk or stand for more than five minutes at a time (AR 433), and sometimes needed help to get out of a chair and the shower. (AR 435.) Coutu further testified that he had his groceries delivered since shopping required too much walking, but that he was able to prepare small meals, dress himself and take care of his personal hygiene. (AR 431.) Finally, he described high levels of stress and anxiety for which he took medication and received counseling. (AR 436.)

Nevertheless, the ALJ issued a decision unfavorable to Coutu in June 2022. (AR 395–409.) As an initial matter, the ALJ found that Coutu had the following severe impairments: peripheral neuropathy, osteoarthritis of the hip and back, depression, anxiety and a substance addiction disorder. (AR 398.) But even with these limitations, the ALJ found that Coutu retained the residual functional capacity ("RFC") to perform sedentary work, with some additional exertional and non-exertional limitations.

Specifically, relevant to his pending appeal before this court, the ALJ found that Coutu retained the RFC to:

> sit for six hours, stand for six hours, and walk for six hours…occasionally balance, stoop, kneel, crawl, and climb ramps and stairs…perform simple, routine and repetitive tasks[, and] tolerate occasional changes in a routine work setting.

(AR 400.) Relying on the testimony of a vocational expert, therefore, the ALJ found that while Coutu could not perform his past relevant work as a landscaper, he could still perform work that was available in significant numbers in the national economy, including telephone solicitor, order clerk and telephone quotation clerk. (AR 408.)

3

Coutu appealed again, but the Appeals Council denied his request for review (AR 3–5), making the ALJ's decision the final decision of the Commissioner.

OPINION

The question before this court is whether the ALJ's decision is supported by "substantial evidence," meaning "sufficient evidence to support the agency's factual determinations" or only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In applying this standard, reviewing courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022). "Rather, this court asks whether the ALJ's decision 'reflects an adequate logical bridge from the evidence to the conclusions.'" *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

Here, plaintiff argues that the ALJ's decision was not supported by substantial evidence for three reasons: (1) the ALJ erred in omitting from the RFC a restriction for use of a walker or other assistive device to stand and walk; (2) the ALJ failed to account for plaintiff's moderate limitations in concentration, persistence, and pace in the RFC; and (3) the ALJ failed to ensure the reliability of the vocational expert's job numbers. The court addresses these three arguments below.

I. **Need for a Walker or Cane**

Plaintiff contends that the medical evidence and his own hearing testimony show a continued need for a walker or cane to stand and walk, and the ALJ erred by failing to account

for his use of a walker or cane in his RFC.  Indeed, if the ALJ had included such a restriction, plaintiff points out that there would be no work available for plaintiff, including the sedentary jobs identified by the vocational expert at the hearing and relied upon by the ALJ in finding plaintiff employable.  (AR 441).

However, the ALJ adequately explained why she did not include a limitation for an assistive walking device in the RFC.  First, she noted that no medical records or medical opinions stated that plaintiff needed or used a cane or walker before March of 2021.  (AR 406.) To the contrary, plaintiff's treating provider, Nicole Beine, M.D, noted in her February 2021 opinion that plaintiff did not need a cane or other assistive device while engaging in occasional standing and walking.  (*Id.*, citing AR 989–91, 1050.)  The ALJ found this opinion "partially persuasive," including that plaintiff could sit six hours and stand and walk two hours without an assistive device.  (*Id.*)  The ALJ also found "generally persuasive" the November 2021 administrative medical finding of state agency reviewing physician Marcia Lipski, M.D., that plaintiff could perform work at the sedentary level without the use of an assistive device.  (AR 406, citing AR 491–93.)

Second, plaintiff's daily activities before February or March 2021 showed that he did not need an assistive device.  In particular, he was working in landscaping as late as December 2020 and January 2021 (AR 402, citing 907–10), and plaintiff told his doctors that he was " "perfectly normal without any balance or walking issues until late February [2021]," at which time his symptoms "came on quickly over a couple of weeks," for the first time requiring his use of a walker at home.  (AR 403, citing AR 1423.)

Third, the ALJ acknowledged that while the record *did* show plaintiff had needed an assistive device to stand and walk beginning in February or March 2022, through the remainder

5

of that year, this period of time coincided with the acute onset of neuropathy symptoms associated with Guillain-Barre Syndrome. (AR 403–04, citing AR 1039, 1041–42, 1284.) However, his symptoms significantly improved within months, such that he was walking with leg braces by February 2022, and using a cane or walker only "occasionally." (AR 404, citing AR 1050.) Other records showed that he was walking independently in February 2022 (AR 1068, 1075,1077), *and* that he did not use a walker or cane during his follow-up neurological appointment in February 2022. (AR 1051–53.)

Fourth, the ALJ explained why he discounted the opinion of consultative examining physician, Neil Johnson, M.D., who opined in October 2021, "I don't think that he can safely walk without a walker." (AR 1003.) In particular, the ALJ explained that Dr. Johnson's opinion stemmed from the time period in which plaintiff was still suffering from Guillain-Barre Syndrome and associated neurology symptoms, but that within a few months, plaintiff had already significantly improved. (AR 406.)

While plaintiff replies that the ALJ's explanations are inadequate, his arguments are undeveloped and difficult to follow.[2] For example, he asserts that a walker was "prescribed by a treating source" (Pl.'s Br. (dkt. #11) at 17), but cites no record evidence to support this assertion; instead, in his function report, plaintiff stated that a "cane was *not* prescribed by a doctor." (AR 742 (emphasis added).) Similarly, plaintiff cites no evidence pertaining to his use of an assistive device that the ALJ overlooked or misconstrued. Rather, he appears to merely disagree with the ALJ's weighing of the evidence, which unfortunately for plaintiff is inadequate to warrant remand.

---

[2] Plaintiff's brief appears to contain several paragraphs referencing a different claimant and facts pertaining to a different case. (Plt.'s Br. (dkt. #11) 21.)

6

At most, plaintiff has shown that the record supports competing inferences about the degree to which he needed to use cane or walker to stand or walk. However, this court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Thus, remand on this issue is not appropriate.

## II.  Concentration, Persistence, and Pace

Plaintiff next contends the ALJ failed to account for the finings that plaintiff was moderately limited in his ability to concentrate and complete tasks. (AR 399.) While the ALJ purported to account for this finding by limiting plaintiff's mental RFC to the performance of simple, routine and repetitive tasks, with occasional changes in a routine work setting, (AR 400), plaintiff contends that the ALJ should have incorporated additional limitations based on the opinion of a state agency reviewing psychologist, Russell Phillips, Psy.D., who opined that plaintiff could: meet the basic mental demands of unskilled work; perform simple, two-three step commands; and concentrate for two hours and manage concentration difficulties with normal work breaks; *but* could not work in a retail environment where there is a lot of contact with the public or in close proximity to fellow coworkers. (AR 453–57 .)

However, in assessing plaintiff's mental RFC, the ALJ adequately addressed the medical records, opinion evidence and plaintiff's daily activities. With respect to Dr. Phillips in particular, the ALJ found Dr. Phillips' opinions only partially persuasive, concluding that plaintiff had only mild, not moderate limitations in understanding, memory and social interaction. (AR 406.) Thus, while agreeing that plaintiff was moderately limited in his general ability to maintain concentration, persistence and pace, the ALJ found that plaintiff could still

7

meet the basic demands of unskilled work *and* concentrate for two hours at a time. (*Id*.) Moreover, the ALJ explained her underlying reasoning, pointing out that during the relevant period, plaintiff was able to help care for his grandparents and mother, care for his personal hygiene, prepare simple meals, perform household chores, work in landscaping, watch television and play video games, all despite his alleged difficulty concentrating and completing tasks. (AR 405, citing AR 737–40, 907–10, 922, 737–40, 425–26, 431.) The ALJ also discussed and incorporated medical opinions of plaintiff's treating provider, Dr. Beine, and of state agency reviewing psychologist, Susan Donahoo, Psy.D. (AR 405, citing AR 981–86), both of which support the ALJ's mental RFC assessment, and neither of which plaintiff challenges in his brief.

Taken in total, this evidence reasonably supports the ALJ's finding that plaintiff could perform simple, routine, repetitive tasks with occasional changes in a routine work setting.

### III. Vocational Expert's Job Numbers

Finally, plaintiff argues the ALJ erred by failing to clarify the methodology that the VE used in estimating the numbers of jobs available in the national economy. However, plaintiff does not actually argue that the VE's methodology was unreliable; instead, he argues that while the VE *may* have used a "viable method," his explanation was "vague and ambiguous" and does not satisfy substantial evidence standard. (Plt.'s Br. (dkt. #11) 17.)

The court agrees with the Commissioner that plaintiff forfeited this argument by failing to raise it during the administrative hearing. *See Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) ("[A] claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections."). Here, the only question plaintiff's attorney asked the VE

8

regarding his job numbers was: "And then your methodology in regards to how you determined your numbers?" (AR 441.) The VE responded that he used, "Department of Labor statistics, alongside SkillTRAN to determine an estimated percentage of the particular DOT code, and within SkillTRAN and using Occupational Employment Survey [data I] only pull[ed] out full-time job numbers." (*Id.*) In turn, plaintiff's counsel neither objected to the VE's job number estimates nor asked the ALJ to disregard those estimates. Nor did counsel file a post-hearing brief challenging the vocational expert's job number estimates as unreliable. By failing to make any specific objection to the VE's job number estimates, therefore, plaintiff forfeited any argument that the VE's job number estimates are unreliable. *See Fetting*, 62 F.4th at 338 ("[A] claimant must do more than make a general objection or vaguely ask the VE about his methodology."); *Coyier v. Saul*, 860 F. App'x 426, 427–28 (7th Cir. 2021) (finding forfeiture where the claimant made only one general objection and asked no specific questions).

Because plaintiff has not shown any basis for remand of the ALJ's disability decision, the Commission's decision denying disability benefits and supplemental security income will be affirmed.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Vaughn Coutu's appeal is DISMISSED.

Entered June 26, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge